


FILED

Jun 18 2024, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Liam Parke,

*Appellant-Plaintiff*

v.

Vishal Vishwam,

*Appellee-Defendant*

---

June 18, 2024

Court of Appeals Case No.
23A-CT-245

Appeal from the Delaware Circuit Court

The Honorable John M. Feick, Judge

Trial Court Cause No.
18C04-2203-CT-35

---

**Opinion by Judge May**
Judges Bailey and Foley concur.

**May, Judge.**

[1] Liam Parke appeals the trial court's grant of summary judgment to Vishal Viswam[1] in the personal injury action Parke brought against Viswam after Parke fell and injured himself on property owned by Viswam. Parke argues genuine issues of material fact made the trial court's grant of summary judgment inappropriate. We affirm the grant of summary judgment for Viswam because he had no duty to Parke under the facts and circumstances herein.

## Facts and Procedural History

[2] In December 2020, Viswam purchased a house on Main Street in Muncie, Indiana, that he intended to own as a rental investment (hereinafter "the house"). At the time of his purchase, the prior owner – Marcus Klepper – had rented the house to five college students – Jordan New, Allan Kassel, William Houser, McKade Schuldt, and Caleb Hasenour – under a one-year contract that commenced in August 2020. That lease rented the whole house to the five students collectively and provided, in relevant part:

> BY THIS AGREEMENT made and entered into on _____ between Marcus C Klepper, herein referred to as Lessor, and William Houser[,] Allan Kassel[,] Jordan New[,] McKade Schuldt[,] Caleb Hasenour[,] herein referred to as Lessee, Lessor leases to Lessee the premises situated at 829 W. North, in the

---

[1] The trial court's docket and orders spell the Appellee-Defendant's name "Vishwam"; however, the parties briefs on appeal and their motions in the trial court all spell his name "Viswam." We found one document in the Record that contains the Appellee-Defendant's signature, and while his signature is illegible, the typed version of his name thereunder is "Vishal Viswam." (Appellant's App. Vol. 2 at 57.) We spell his name herein to match his signature, but we maintain the spelling from the trial court's caption on our cover sheet.

City of Muncie, County of _____, State of IN, and more particularly described as follows: _____, together with all appurtenances, for a term of one year to commence on 8-1-2020, and to end on 7-31-2021 at ____ o'clock A.m.

1.     Rent.  Lessee agrees to pay, without demand, to Lessor as rent for the demised premises the sum of one thousand five hundred Dollars ($1,500.00), per month in advance on the ____ day of each calendar month . . . .

2.     Security Deposit.  On execution of this lease, Lessee deposits with Lessor one thousand five hundred Dollars ($1,500.00), receipt of which is acknowledged by Lessor, as security for the faithful performance by Lessee of the terms hereof, to be returned to Lessee, without interest, on the full and faithful performance by the Lessee of the provisions hereof.

3.     Quiet Enjoyment.  Lessor covenants that on paying the rent and performing the covenants herein contained, Lessee shall peacefully and quietly have, hold, and enjoy the demised premises for the agreed term.

4.     Use of Premises.  The demised premises shall be used and occupied by Lessee exclusively as a private single family residence, and neither the premises nor any part thereof shall be used at any time during the term of this lease by Lessee for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than as a private single family residence.  Lessee shall comply with all the sanitary laws, ordinances, rules, and orders of appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the demised premises, and the sidewalks connected thereto, during the term of this lease.

5.    Number of Occupants.  Lessee agrees that the demised premises shall be occupied by no more than 5 persons, consisting of 5 adults and 0 children under the age of ___ years, without the written consent of Lessor.

6.    Condition of Premises.  Lessee stipulates that he has examined the demised premises, including the grounds and all buildings and improvements, and that they are, at the time of this lease, in good order, repair, and a safe, clean, and tenantable condition.

* * * * *

11.    Utilities.  Lessee shall be responsible for arranging for and paying for all utility services required on the premises, except that NONE shall be provided by Lessor.

12.    Maintenance and Repair.  Lessee will, at Lessee's sole expense, keep and maintain the leased premises and appurtenances in good and sanitary condition and repair during the term of this lease and any renewal thereof.  In particular, Lessee shall keep the fixtures in the house or on or about the leased premises in good order and repair; keep the furnace clean; keep the electric bells in order; keep the walks free from dirt and debris; and, at Lessee's sole expense, shall make all required repairs to the plumbing, range, heating, apparatus, and electric and gas fixtures whenever damage thereto shall have resulted from Lessee's misuse, waste, or neglect or that of Lessee's employee, family, agent, or visitor.  Major maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor, shall be the responsibility of Lessor or his assigns.

* * * * *

22.    Other Terms[.]  TENANTS AGREE TO CARRY RENTERS INSURANCE AND HOLD LANDLORD BLAMELESS FOR ANY LOSSES THAT MAY OCCUR.

(Appellant's App. Vol. 2 at 58-59) (emphases in original).

On or about January 20, 2021, Parke visited the house to see one of the tenants. As Parke was leaving, he slipped and fell on stairs that were covered with "snow and/or ice" and acquired "serious injuries." (*Id*. at 9.) Specifically, Parke fell on the lower set of stairs that can be seen in this photo:



(*Id*. at 32.)

Parke filed a complaint for damages against Viswam on March 3, 2022. The complaint asserted:

> 3.      That it was the duty of the defendant to use ordinary care and diligence to keep and maintain the said premises in a condition reasonably safe for its intended uses and free from all defects and conditions which would render the premises dangerous and unsafe for plaintiff, or present an unreasonable risk of harm to plaintiff in [his] lawful use of same.
>
> 4.      That it was the duty of the defendant to exercise reasonable care to protect plaintiff, by inspection and other affirmative acts, from the danger of reasonably foreseeable injury occurring from reasonably foreseeable use of said premises.
>
> 5.      That it was the duty of the defendant to have available sufficient personnel and equipment to properly inspect and maintain the aforesaid premises in a condition reasonably safe for plaintiff and free from defects and conditions rendering the premises unsafe.
>
> 6.      That it was the duty of the defendant to warn plaintiff of the dangerous and unsafe condition existing on said premises.
>
> 7.      That the defendant knew or should have known of the unreasonable risk of danger to the plaintiff but failed either to discover it or to correct it after discovery.
>
> 8.      That the fall and resultant permanent injuries of plaintiff were caused by the negligence of the defendant who failed to utilize reasonable care in the inspection and maintenance of said premises.

9.      That the aforesaid acts of negligence on the part of the defendant were the proximate cause of the injuries sustained by the plaintiff.

10.      That the plaintiff has incurred medical expenses and other special expenses, and will incur future medical expenses, lost wages and other special expenses, as a direct and proximate result of defendant's negligence.

WHEREFORE, the plaintiff demands judgment against the defendant for permanent injuries in a reasonable amount to be determined at the trial of this cause, for medical expenses and other special expenses, for future medical expenses, lost wages and other special expenses, court costs, and all other proper relief in the premises.

(*Id*. at 9-10) (emphasis in original).

Viswam filed an answer, with affirmative defenses and a jury demand, on June 27, 2022. On August 1, 2022, Viswam moved for permission to file an amended answer to add the affirmative defense of non-party liability and listed the following non-parties that he believed might be liable: "MiddleTown Property Management; William Houser; Marcus Klepper; Caleb Hasenour; Jordan New; Allan Kassel; and McKade Schuldt." (*Id*. at 24.) The trial court granted Viswam permission to file the amended answer.

On November 10, 2022, Viswam filed a motion for summary judgment, designation of evidence, and brief in support of summary judgment. In his brief, Viswam argued he had no duty to Parke because he did not control the property at the time of Parke's accident. In support of his argument, Viswam

cited *Olds v. Noel*, 857 N.E.2d 1041 (Ind. Ct. App. 2006), which held a landlord had no duty to clear snow and ice from the front sidewalk of a single-family residence that had been rented to others.

[7] In response, Parke asserted Viswam "breached his duty 'to warn plaintiff of the dangerous and unsafe condition existing on said premises.'" (Appellant's App. Vol. 2 at 62) (quoting Complaint for Damages). That unsafe condition was the lack of a handrail on the lower set of steps, which Parke called a "*latent defect*." (*Id*. at 64) (italics in original). Parke also claimed Viswam's installation of a handrail on the lower set of stairs after Parke's fall demonstrated Viswam had a duty to install the handrail for Parke. In support of his arguments, Parke submitted an affidavit in which he affirmed, in necessary part:

> 3.     At the time of my visit to the house, there was <u>no</u> handrail on the bottom stairs in front of the property, although there were handrails installed on the top portion of the steps leading up to the house.
>
> 4.     If a railing had been installed on the bottom stairs leading up to the house, I would have used that railing to help stabilize himself [sic] as I descended the stairs in snowy and icy ground conditions.
>
> 5.     Defendant Vishal Viswam and <u>not</u> the tenants renting the unit installed the railing for the bottom portion of the stairs after my fall.
>
> 6.     At no point did Defendant Vishal Viswam tell me or my friends that they would be responsible for paying for, or

otherwise installing, the handrail that was installed on the stairs that I fell on.

7.    I would not have fallen if I had the railing in place as it currently is now, regardless of the conditions of the snow and ice on the ground.

(*Id*. at 66) (emphases in original) (citation to Exhibit omitted).

[8] On January 20, 2023, the trial court granted summary judgment for Viswam and against Parke in an order that found:

1. The tenants were in control of the premises.

2. The affidavit is at best pure speculation.

3. That there exists no general issue of material fact.

(*Id*. at 7.)  Viswam moved the court to enter the judgment in his favor as a final judgment pursuant to Trial Rule 54(B).  On February 24, 2023, the trial court entered an order that made the grant of summary judgment for Viswam a final appealable order.

## Discussion and Decision

[9] "'When reviewing the grant or denial of a motion for summary judgment we stand in the shoes of the trial court.'" *Supervised Estate of Kent*, 99 N.E.3d 634, 637 (Ind. 2018) (quoting *City of Lawrence Utils. Serv. Bd. v. Curry*, 68 N.E.3d 581, 585 (Ind. 2017)).  Summary judgment should be granted "if the designated

evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

> The party moving for summary judgment bears the burden of making a prima facie showing that there is no issue of material fact and that it is entitled to judgment as a matter of law. The burden then shifts to the non-moving party to show the existence of a genuine issue.

*Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020).

[10] "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed facts support conflicting reasonable inferences[.]" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (citations omitted). Any doubts about the facts, or the inferences to be drawn from the facts, are resolved in favor of the non-moving party. *Burton*, 140 N.E.3d at 851. Where the challenge to summary judgment raises questions of law, we review them de novo. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016).

[11] Findings of fact and conclusions of law entered by the trial court aid our review, but they do not bind us. *Supervised Estate of Kent*, 99 N.E.3d at 637. The party appealing the trial court's decision has the burden to convince us the trial court erred, but we scrutinize the trial court's decision carefully to make sure a party was not improperly denied its day in court. *Ryan v. TCI Architects*, 72 N.E.3d 908, 913 (Ind. 2017). Indiana "consciously errs on the side of letting marginal

cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014).

[12] Plaintiffs alleging negligence must prove: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) "the breach 'proximately caused' a 'compensable injury.'" *Pennington v. Memorial Hosp. of South Bend, Inc.*, 223 N.E.3d 1086, 1094 (Ind. 2024) (quoting *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)). Duty "is an indispensable element of a negligence claim." *Id*. at 1096. If a defendant has no duty to a plaintiff, "there can be no breach and, hence, no liability." *Id*. Whether a duty exists is a question of law that courts decide. *Id*.

[13] The duty owed by landowners to a person on their property depends on whether that person is a trespasser, licensee, or invitee. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991), *reh'g denied*. In Indiana, social guests such as Parke are categorized as invitees. *Id*. at 643. Landowners have a duty "to 'exercise reasonable care for the invitee's protection while the invitee is on the premises.'" *Pennington*, 223 N.E.3d at 1097 (quoting *Rogers*, 63 N.E.3d at 320). The "parameters of" the duty to invitees who allege a dangerous condition on land is controlled by section 343 of the Restatement (Second) of Torts. *Id*. That section of Restatement explains:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (Am. L. Inst. 1965).[2] "Under this test, foreseeability is an element of duty." *Pennington*, 223 N.E.3d at 1097. As we undertake this foreseeability analysis, we focus "specifically on 'the condition' that allegedly resulted in injury.'" *Id*. "The duty to exercise reasonable care extends to 'an unreasonable risk of harm' that the defendant 'should realize' exists and 'should expect' invitees to overlook or fail to 'protect themselves against.'" *Id*. (quoting Restatement § 343).

[14]  In this case, Viswam is the landowner, but he is also a lessor, and as our Indiana Supreme Court has explained:

> [W]hen the landowner is a lessor and the lessee is in operational control of the premises, such duty rarely exists. A landlord under many circumstances has no liability to tenants or others for injuries on the property when the tenant is in full control of the

---

[2] "The Restatement instructs that Section 343 should be read together with Section 343A." *Roumbos v. Vazanellis*, 95 N.E.3d 63, 66 (Ind. 2018) (citing Restatement § 343, cmt. a). That section explains: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (Am. L. Inst. 1965).

leased premises. In the absence of statute, covenant, fraud or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property.

*Yost v. Wabash College*, 3 N.E.3d 509, 515-516 (Ind. 2014) (internal citations and quotations omitted).

[15] Parke argues Viswam cannot find refuge in this general rule protecting landlords because the steps where Parke fell were a "common area" over which Viswam maintained control. (Appellant's Br. at 10.) We reject Parke's argument based on *Olds v. Noel*, 857 N.E.2d 1041 (Ind. Ct. App. 2006). In *Olds*, the Noels had rented a single-family residence to two adults under a single lease that both lessees signed on the same date and that made the lessees responsible for keeping the sidewalk free of obstructions. *Id*. at 1044-45. Olds, who was a mail carrier, slipped and fell on the sidewalk and stoop area of the house when it was covered with snow and ice. *Id*. at 1042. Olds sustained injuries and sued the Noels. *Id*. The Noels, like Viswam, asserted they were not responsible for clearing the sidewalk and stoop because it was under the control of the lessees. *See id.* at 1043. Olds, like Parke, insisted the sidewalk was a "common area" over which the landlord retained control and responsibility. *Id*. In rejecting Olds's argument, we explained:

> Olds argues that because the Noels rented this single-unit residence to two persons whose relationship to one another is not known, the sidewalk, along with the front stoop, mailbox, and entryway to which the sidewalk leads, were "common" areas for

the purposes of the lease. He contends that the fact that two separate tenants of the residence each held a right to utilize these areas, the areas are per se "common." We find this argument insufficient to withstand summary judgment.

In proffering a definition of "common area" that construes the phrase to mean, basically, any area used by more than one party to a lease, Olds ignores the definition of the phrase. Black's Law Dictionary defines "common area" in the landlord-tenant context as "The realty that all tenants may use though the landlord retains control and responsibility over it." Black's Law Dictionary 291 (8th ed. 2004). Following this definition, then, a portion of any leased premises may only be considered a 'common area" where the landlord retains control and responsibility over the portion.

As the Noels point out, Indiana courts to date have recognized common areas on rental properties only in apartment complexes, duplexes, or other multi-unit properties where tenants lease property subject to leases specific to each individual rental unit. *See Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158 (Ind. Ct. App. 2005) (discussing common areas in apartment complexes), *reh'g denied*, *trans. denied*; *Dawson by Dawson v. Long*, 546 N.E.2d 1265 (Ind. Ct. App. 1989) (discussing common areas of a duplex), *reh'g denied*, *trans. denied*; *Flott v. Cates*, 528 N.E.2d 847 (Ind. Ct. App. 1998) (discussing common areas of a residential home divided into three smaller apartments), *reh'g denied*. We agree with the Noels' assertion regarding the logical reasoning behind common areas in such rental situations: because there are multiple tenants occupying multiple units under separate leases, the landlord maintains control over the common areas because it would be impractical to assign divided control of and responsibility for those areas to the tenants.

In the instant case, it is undisputed that the Noels rented an undivided, single-family dwelling. Moreover, both Lessees – Brown and Phillips – signed one common lease on the same date. Without evidence to the contrary, this suggests that the Lessees shared the whole of the premises rather than each utilizing only one-half of it under distinct tenancies. Furthermore, the language of the lease itself indicates that the Lessees were responsible for the sidewalk and other areas that may be considered analogous to a sidewalk for the purposes of control. Article 21 of the lease provides, "The streets, sidewalks, entrances, hallways shall not be obstructed in any way or used by you for any purpose other than ingress or egress." Another section of that article also provides, "You shall keep the premises in a clean and tenantable condition and shall obey all ordinances of the City and County or other agency of government, as well as the orders, rules and regulations of the health officers or other officers." . . . In short, the evidence does not support Olds' contention that the sidewalk of this single-family dwelling is properly regarded as a common area for purposes of landlord-tenant law.

*Id*. (footnotes and some citations omitted). The fact that Viswam's property was leased to five adults instead of two does not make a different result appropriate here.

[16]     The lease herein refers to Viswam's property as a "single family residence."[3] (Appellant's App. Vol. 2 at 58.) No designated evidence suggests the home had

---

[3] Parke insists Vishwam's house cannot be considered a single-family residence because the lessees do not fit within a dictionary definition of "family." (*See* Appellant's Br. at 9-10.) In support, he cites a case from North Carolina, *Danaher v. Joffee*, 646 S.E.2d 783 (2007), in which the court held rental of a house to a group of college students violated a restrictive covenant requiring houses to be used only as single-family residences. (*Id*. at 10.) However, the case before us is not a restrictive covenant case and, in the context of landlord-

been divided into separate rental units, and the entirety of the home was leased to five adults in a single lease on the same date. The lease refers to the five adults collectively as "Lessee" and requires a single payment of $1,500 per month to cover the rental of the house to all five adults. (*Id*.) The premises is leased to Lessee "exclusively" and requires Lessee to "comply with all the sanitary laws, ordinances, rules, and orders of appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the demised premises, and the sidewalks connected thereto, during the term of this lease." (*Id*.) Regarding "Maintenance and Repair" the lease provides:

> Lessee will, at Lessee's sole expense, keep and maintain the leased premises and appurtenances in good and sanitary condition and repair during the term of this lease and any renewal thereof. In particular, Lessee shall keep the fixtures in the house or on or about the leased premises in good order and repair; keep the furnace clean; keep the electric bells in order; keep the walks free from dirt and debris[.]

(*Id*. at 59.) In the lease, Lessee also stipulates it "examined the demised premises, including the grounds and all buildings and improvements, and that

---

tenant law, the term "single-family residence" is concerned not with the legal relationships between the people who lease the premises but rather with the characteristics of the rental property that are relevant for determining whether a landlord retained control over some portions of the property that would be impractical to divide or to assign control over to individual residents. *See*, *e.g.*, *Olds*, 857 N.E.2d at 1044-45 (discussing how and why, in the landlord-tenant context, Indiana law distinguishes a single-family residence from apartment complexes, duplexes, and a home divided into separate rental units). Accordingly, Parke's argument has no merit.

they are, at the time of this lease, in good order, repair, and a safe, clean, and tenantable condition."  (*Id*. at 58.)

[17]   Just as in *Olds*, the sidewalk and steps on Viswam's property were not a common area for purposes of landlord-tenant law.  The lessees were given full control of the house and surrounding grounds, including the sidewalks, in a single lease on the same day.  Because Parke has not directed us to any genuine issues of material fact about Viswam's lack of duty to Parke under these circumstances, we affirm the trial court's grant of summary judgment to Viswam.[4]  *See Olds*, 857 N.E.2d at 1042 (affirming grant of summary judgment to landlord who owed no duty of care to invitee visiting a "single-unit rental dwelling").

## Conclusion

[18]   This single-unit house rented to five college students in a single lease is not a multi-unit rental, and thus there were no "common areas" that Viswam had a duty to maintain.  As Parke failed to demonstrate a genuine issue of material

---

[4] Parke also argues on appeal that the trial court "improperly rejected plaintiff's affidavit as speculative[.]" (Appellant's Br. at 14) (capitalization removed).  Parke argues the affidavit was improperly struck because his assertions about using the handrail as he descended the steps created a genuine issue of material fact for a jury about the proximate cause of his fall.  (*See id.* at 14-15.)  However, when a defendant has no duty to a plaintiff, the proximate cause of the plaintiff's injury becomes moot.  *See, e.g.*, *Pennington*, 223 N.E.3d at 1096 ("Absent a duty, there can be no breach and, hence, no liability.").  Accordingly, we need not review the trial court's rejection of Parke's affidavit as "mere speculation" because any error therein was harmless.  *See* Ind. Appellate Rule 66(A) ("No error or defect in any ruling or order . . . is ground for granting relief or reversal on appeal where its probable impact . . . is sufficiently minor so as not to affect the substantial rights of the parties.").

fact about whether Viswam owed him a duty, Viswam was entitled to summary judgment. Accordingly, we affirm.

[19] Affirmed.

Bailey, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

Daniel Gore
Nunn Law Office
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Adam S. Willfond
Travelers Staff Counsel Indiana
Indianapolis, Indiana